#### UNITED STATES DISTRICT COURT
#### WESTERN DISTRICT OF TENNESSEE
#### EASTERN DIVISION

| | | |
|---|---|---|
| CEDRICK WHITESIDE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 17-1106-JDT-cgc |
| | ) | |
| BRIAN DUKE, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER PARTIALLY DISMISSING COMPLAINT AND DIRECTING PLAINTIFF TO PROVIDE ADDITIONAL INFORMATION TO FACILITATE SERVICE OF PROCESS ON REMAINING DEFENDANT

On June 5, 2017, Plaintiff Cedrick Whiteside, who at the time of filing was a pretrial detainee at the Henderson County Criminal Justice Complex (HCCJC) in Lexington, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) After Whiteside filed the financial documents required under the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b), (ECF No. 6), the Court issued an order granting leave to proceed *in forma pauperis* and assessing the civil filing fee pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 7.)

On May 30, 2019, the Court directed Whiteside to file a non-prisoner *in forma pauperis* affidavit or pay the remaining portion of the filing fee because Whiteside had notified the Court of his release from HCCJC. (ECF No. 25.) On June 5, 2019, however, Whiteside notified the Court that he is again incarcerated at the HCCJC. (ECF No. 26) The Court therefore issued an order

reassessing the remaining portion of the civil filing fee in accordance with the PLRA. (ECF No. 28.)

In the intervening months, Whiteside filed several motions and amendments to his complaint. The Court granted his motions to amend, (ECF Nos. 5, 10, 11, 12, 21), denied his motion for service of process, (ECF No. 13), and granted his motion to dismiss two Defendants from the lawsuit, (ECF No. 18). (ECF Nos. 17 & 24.) The Clerk shall record the Defendants as Brian Duke, Henderson County Sheriff; Jackie Bausman, HCCJC Lieutenant; Officer Jesslyn Smith; Nurse Derinda; Officer First Name Unknown (FNU) Shanks; FNU Pots and Doug Williams, Troopers with the Tennessee Highway Patrol;[1] Daphne Renfroe; Kim Vineyard; Quality Correctional Health Care; and Henderson County.

Whiteside alleges that on April 14, 2017, he was arrested and taken to the HCCJC for booking. (ECF No. 1 at PageID 2.) As Whiteside's hands were handcuffed behind his back, Trooper Pots allegedly pulled his hands upward, which "[b]roke the key of the Handcuff Inside the cuffs" and caused pain in Whiteside's shoulders and hand. (*Id.*) Whiteside alleges that Trooper Williams also was present during this incident and held Whiteside when he was "assaulted" by Trooper Pots. (ECF No. 5 at PageID 6.) An unspecified person allegedly told Whiteside "on the side" before his arrest that if he did not remain quiet, he "would be Hanged From a Tree with an exten[s]ion cord." (ECF No. 1 at PageID 3.) Officer Shanks walked Whiteside to a holding cell

---

[1] Whiteside interchangeably refers to Defendant Pots as an Officer and a Trooper, but he does specifically identify Pots as an Officer with the "TN.H.P." or Tennessee Highway Patrol (THP). (ECF No. 1 at PageID 1; ECF No. 5 at PageID 15-16.) The THP is a division of the Tennessee Department of Safety and Homeland Security. *See* https://www.tn.gov/safety/tennessee-highway-patrol.html. For ease of clarity, the Court will refer to Pots as Trooper Pots. In the amendment filed June 15, 2017, Whiteside identifies Williams as another THP Officer. (ECF No. 5 at PageID 15-16.) The Court also will refer to Williams as a Trooper.

with his hand on Whiteside's neck, which Whiteside alleges did not cause pain, so that Whiteside "wouldn't get any new charges or try to retaliate against Trooper Pots." (*Id.*)

A few days later, Whiteside spoke with Nurse Derinda and requested treatment for the pain in his arm. (*Id.*) Derinda said she would contact a doctor, and Whiteside received x-rays about a week later. (*Id.*) The x-ray revealed that Whiteside had a dislocated thumb and torn ligaments in his hand, for which he received two different casts from a doctor outside the HCCJC. (*Id.*) Whiteside described his injury to Lieutenant Bausman, who did not report it to the Sheriff, and to Officer Shanks, who told Whiteside "to pray about the situation." (*Id.* at PageID 4.)

Whiteside alleges that he spoke with Sergeant Hatchett, who is not a Defendant, about signing a "property form" so that money could be transferred to Whiteside's wife. (*Id.*) Officer Smith "fro[wned] on the situation then stated it wasn't going to Happen." (*Id.*) Whiteside alleges that since speaking with Officer Smith, Lieutenant Bausman has denied him "access to call my Lawyer," denied "request slips," and charged $600 for the treatment of his hand. (*Id.* at PageID 4-5.) Whiteside in passing also alleges that inmates at the HCCJC are forced to eat in the same room where others use the toilet. (*Id.* at PageID 5.)

In his amendments, Whiteside alleges that Defendant Renfroe "has continued to not abide by the state notary of the public policies and laws." (ECF No. 5 at PageID 15.) According to Whiteside, Renfroe "is in charge of legal and law books" at the HCCJC and refused to provide him legal books, or told him she could not find them, and refused to notarize legal documents. (*Id.* at PageID 16.) Whiteside alleges that his grievances about Renfroe have gone unanswered. (*Id.*) He also alleges that his grievances against Defendant Vineyard, who is in charge of trust fund accounts at HCCJC, were mishandled. (ECF No. 10 at PageID 30.)

Whiteside further alleges that he "has been exposed to the Hepatitis Disease" at the HCCJC. (ECF No. 21 at PageID 73.) He alleges that he was temporarily housed with another inmate who, unknown to Whiteside, has Hepatitis A. (*Id.* at PageID 74-75.) Whiteside alleges that he shared food and electronic cigarettes and played cards with the other inmate while housed with him. (*Id.*) Whiteside alleges that "hundreds of inmates have passed through" the different pods in the HCCJC, and he has had contact with dozens, but there is no medical protocol in place to test incoming inmates for diseases or bloodborne illnesses. (*Id.* at PageID 76.) Whiteside alleges that in June 2018, the HCCJC staff learned that the inmate had Hepatitis A, and the entire jail, including the staff, were vaccinated for Hepatitis A. (*Id.* at PageID 78.) He contends, however, that a six-month follow-up vaccine is required, and he questions whether he will receive it. (*Id.*)

Whiteside sues the Defendants in their individual and official capacities. (ECF No. 1 at PageID 5.) He seeks $100,000 in damages from each Defendant. (*Id.* at PageID 6.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

(1)  is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2)  seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest

an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Whiteside filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Whiteside's official-capacity claims against Defendants Pots and Williams must be construed as having been brought against their employer, the Tennessee Department of Safety and Homeland Security. Claims against the Department, in turn, are treated as claims against the State of Tennessee. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Va. Office for Protection & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)). Tennessee has not waived its sovereign immunity. *See* Tenn. Code Ann. § 20-13-102(a). Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Whiteside thus has no claim against Defendants Pots and Williams in their official capacities.

Whiteside's official capacity claims against Sheriff Duke and the various officers and other employees at the HCCJC are construed as claims against their employer, Henderson County. When a § 1983 claim is made against a municipality or county, the court must analyze two distinct issues: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so,

whether the municipality or county is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992).

A local government such as a municipality or county "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691 (1978) (emphasis in original); *see also Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). A municipality may be held responsible for a constitutional deprivation only if there is a direct causal link between a municipal policy or custom and the alleged deprivation. *Monell*, 436 U.S. at 691-92; *Deaton v. Montgomery Co., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986) (emphasis in original)).

Whiteside does not allege that he suffered an injury because of an unconstitutional policy or custom of Henderson County. He alleges that new inmates at the HCCJC do not receive a formal medical assessment, including a blood test or screening for communicable diseases. Whiteside, however, does not identify this as a practice or custom of the facility, nor does he connect it to the County. He therefore fails to state a claim against Henderson County or any Henderson County employee in his or her official capacity.

7

Whiteside's official capacity claim against Nurse Derinda is construed against Quality Correctional Health Care, which he alleges employed Derinda and provides health care at the HCCJC. "A private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)). The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or provide medical care or food services to prisoners. *Id.* at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001); *see also Eads v. State of Tenn.*, No. 1:18-cv-00042, 2018 WL 4283030, at *9 (M.D. Tenn. Sept. 7, 2018). To prevail on a § 1983 claim against Quality Correctional, Whiteside "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights. *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011).

Whiteside has not alleged that a policy or custom of Quality Correctional was the "moving force" behind an alleged violation of his constitutional rights. He therefore fails to state a claim against Quality Correctional or Nurse Derinda in her official capacity.

Whiteside's allegations against Trooper Pots in his individual capacity amount to a claim of excessive force. At the time of the alleged assault, Whiteside was an arrestee or pretrial detainee whose protection against excessive force is provided by the Fourteenth Amendment. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). Excessive force claims brought by pretrial detainees are analyzed under the Fourteenth Amendment's standard of objective reasonableness, which "turns on the 'facts and circumstances of each particular case.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The Court must judge the reasonableness of a particular use of force

"from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.*

Under an objective reasonableness inquiry, "the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397 (citations omitted). The proper application of this standard requires consideration of the following factors:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley*, 135 S. Ct. at 2473. This list is not exhaustive but illustrates some of the "objective circumstances potentially relevant to a determination of excessive force." *Id.*

Whiteside states that he was in the booking area at the HCCJC with his hands handcuffed behind his back when Trooper Pots allegedly pulled Whiteside's hands up, injuring him. Because Whiteside was handcuffed, Pots was prohibited from using *gratuitous* force on Whiteside. *See Bultema v. Benzie Cnty.*, 146 F. App'x 28, 35 (6th Cir. 2005); *see also Brown v. Lewis*, 779 F.3d 401, 419 (6th Cir. 2015) ("[T]he use of violence against a subdued and non-resisting individual has been clearly established as excessive, regardless of whether the individual had been placed in handcuffs."). Although Whiteside does not allege whether he was resisting any officers' orders at the time, he alleges that Trooper Pots pulled his arms upward with enough force to break the key inside of the handcuffs and cause Whiteside pain to his shoulders and hand. Taking the facts alleged as true, Whiteside sufficiently states a claim of excessive force against Trooper Pots. The Court will allow this claim to proceed.

Whiteside also seeks to hold Defendants Shanks and Williams liable for Pots's actions because they were present in the booking area at the HCCJC when Whiteside was injured.

9

"[A] correctional officer who observes an unlawful beating may . . . be held liable under § 1983 without actively participating in the unlawful beating." *McHenry v. Chadwick*, 896 F.2d 184, 188 (6th Cir. 1990). However, the facts alleged must show that the officers "provid[ed] an opportunity for the attack and [did] nothing" or remained "idly by while a known attack took place without intervening" *Carico v. Benton, Ireland, & Stovall*, 68 F. App'x 632, 639 (6th Cir. 2003). The officers will not be held liable without a showing that they "should have been aware of the reasonable likelihood of a potential attack and intervened earlier." *Id.*

Whiteside alleges Defendants Shanks and Williams were present when Trooper Pots injured Whiteside's arm and that Williams was holding Whiteside when the injury occurred. He also alleges that immediately after, Shanks escorted Whiteside to a holding cell to prevent him from retaliating against Pots. Whiteside does not allege that either Shanks or Williams knew or should have known that Pots would pull up on Whiteside's arms and injure him or had the opportunity to prevent Pots's action. He instead alleges only a single, unexpected use of force before Shanks intervened and removed Whitefield from Pots. These allegations are insufficient to hold Defendant Shanks or Williams liable under § 1983 for Pots's actions.

Whiteside alleges that Nurse Derinda provided inadequate medical care for his hand. "The Eighth Amendment's prohibition on cruel and unusual punishment generally provides the basis to assert a § 1983 claim of deliberate indifference to serious medical needs, but where that claim is asserted on behalf of a pre-trial detainee, the Due Process Clause of the Fourteenth Amendment is the proper starting point." *Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018) (quoting *Phillips v. Roane Cnty.*, 534 F.3d 531, 539 (6th Cir. 2008)). Like an Eighth Amendment claim, a Fourteenth Amendment claim of deliberate indifference has both an objective and a subjective component. *Id.* To satisfy the objective component, "the detainee must demonstrate the existence

10

of a sufficiently serious medical need." *Id.* (quoting *Spears v. Ruth*, 589 F.3d 249, 254 (6th Cir. 2009)). "For the subjective component, the detainee must demonstrate that the defendant possessed a sufficiently culpable state of mind in denying medical care." *Id.* at 891 (quoting *Spears*, 589 F.3d at 254). A defendant has a sufficiently culpable state of mind if he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Whiteside's allegations that he suffered a dislocated thumb and torn ligaments satisfy the objective component. However, he cannot satisfy the subjective component. Whiteside alleges that he received treatment from a doctor, including x-rays on his hand and two different casts. When a plaintiff has received some medical treatment, "'federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Burgess v. Fischer*, 735 F.3d 462, 476 (6th Cir. 2013) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). Although Whiteside alleges he had to wait a week to see the doctor, he does not allege that the delay was intentional or caused him further harm. The delay, at most, may constitute negligence, which does not amount to a constitutional violation. *See Farmer*, 511 U.S. at 835-36. Whiteside therefore does not state a Fourteenth Amendment claim against Nurse Derinda.

Whiteside also alleges that he was exposed to Hepatitis A and seeks to assert a Fourteenth Amendment claim against Defendants Duke, Bausman, Quality Care, and Henderson County. Even had Whiteside properly alleged a basis for such liability against Quality Care or Henderson County, this allegation does not state a claim against any Defendant. Whiteside does not allege that he suffers from any actual medical condition as a result of the exposure. He alleges only that he was concerned about his health after he learned that a fellow inmate, with whom he temporarily

11

was housed and shared food and e-cigarettes, had Hepatitis A. The HCCJC vaccinated the entire jail population after learning that the inmate had Hepatitis A, and Whiteside does not allege that he now has Hepatitis A. Under these particular circumstances, Whiteside's fear that he might develop a future medical condition does not qualify as a serious medical need. Moreover, the PLRA bars prisoner suits "for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e); *see Braswell v. Corr. Corp. of Am.*, 419 F. App'x 522, 626 (6th Cir. 2011). Therefore, Whiteside does not state a claim regarding his alleged potential exposure to Hepatitis A.[2]

Whiteside's allegation that he was forced to eat in the same room where inmates use the toilet also fails to state a claim. He does not allege that he was harmed by having to eat in close proximity to the toilet. The Constitution does not protect a prisoner from every unpleasant prison experience. *See Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). A prisoner must allege "extreme deprivations . . . to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). The alleged conditions do not constitute an objectively extreme deprivation or offend contemporary standards of decency. *See Baggett v. Fuson*, No. 3:14-CV-02366, 2015 WL 328348, at *2 (M.D. Tenn. Jan. 23, 2015) (dismissing conditions of confinement claim that inmates must eat in cells near toilets as "insufficiently serious" to constitute cruel and

---

[2] To the extent Whiteside seeks to sue on behalf of other inmates who may have been exposed to Hepatitis A, he lacks standing to assert those claims. One of the three elements of standing is that "the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks, footnote and citations omitted). "In requiring a particular injury, the Court meant that the injury must affect the plaintiff in a personal and individual way." *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 134 (2011) (internal quotation marks and citation omitted).

unusual punishment). What's more, Whiteside does not allege that any named Defendant was aware of the alleged conditions and disregarded an excessive risk to his health or safety.

Whiteside alleges that Defendant Bausman denied him access to call his attorney. Inmates have a right of meaningful access to their counsel, but that right "does not require prison officials to provide that access by any particular means, such as the unlimited use of telephones." *Cesal v. Bureau of Prisons*, No. CIVA 04CV281 DLB, 2006 WL 2803057, at *5 (E.D. Ky. Sept. 28, 2006) (citing *Aswegan v. Henry*, 981 F.2d 313, 314 (8th Cir. 1992)); *cf. Wooden v. Norris*, 637 F. Supp. 543, 556 n.4 (M.D. Tenn. 1986) (citing cases in which "particular restrictions on inmate telephone use were reasonable in light of other means of access to the courts provided by the prison administration"). Whiteside does not allege that he has been entirely deprived of access to his attorney. He does not allege that he may not *receive* calls from his attorney, send mail to his attorney, or place no attorney phone calls whatsoever. His lone allegation that he was denied access to make calls to his attorney, without more, does not state a claim.

Whiteside's allegations that Defendant Renfroe has denied him access to legal books and refused to notarize certain documents amount to a claim that he was denied access to the courts. Prisoners and pretrial detainees retain a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821-22 (1977) (citing *Ex Parte Hull*, 312 U.S. 546 (1941)). That right "extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). To protect this right, prison authorities must "provid[e] prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828. To have standing to pursue a First Amendment claim that he was denied access to the courts, Whiteside must show that "prison officials' conduct inflicted an 'actual injury,' i.e., that the conduct hindered his efforts to pursue a nonfrivolous legal claim."

13

*Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001) (citation omitted); *see Thaddeus-X*, 175 F.3d at 394. In addition, "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis v. Casey*, 518 U.S. 343, 353 & n.3 (1996)).

Whiteside fails to state a claim that he was denied access to the courts. Although he alleges Defendant Renfroe denied him legal books and notary services, he does not allege that he was unable to pursue a legal claim because of Renfroe's actions or otherwise suffered any injury. Nor does Whiteside specify what kind of action he sought to file or describe the legal documents for which he was denied notarization. Furthermore, to the extent he seeks access to the law library in connection with his criminal proceeding, Whiteside concedes that he is represented by an attorney.

Whiteside also alleges that his grievances against Defendants Renfroe and Vineyard were mishandled or never answered. "There is no inherent constitutional right to an effective prison grievance procedure." *See LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)). Nor is there a "constitutionally protected due process right to unfettered access to prison grievance procedures." *Walker v. Michigan Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005). A § 1983 claim therefore cannot be premised on contentions that the grievance procedure was inadequate or arbitrary. *Id.*; *see LaFlame*, 3 F. App'x at 348.

In conclusion, apart from his individual-capacity claim against Defendant Pots, the Court DISMISSES Whiteside's complaint, for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)-(iii) and 1915A(b)(1)-(2). Whiteside's Fourteenth Amendment claim of excessive force against Trooper Pots may proceed.

Although Whiteside has stated a valid claim against Trooper Pots, process cannot be issued at this time. Whiteside has not identified the THP district where Pots currently is assigned and has not provided a work or home address for Pots or any other information in the complaint or the amendments regarding where Pots may be served.

Whiteside is ORDERED to provide to the Court, in writing and on or before July 15, 2019, either any additional information he has regarding an address where Pots may be served or a statement that he is unable to obtain that information.

Whiteside is warned that failure to respond to this order in a timely manner may result in the dismissal of this case in its entirety, without further notice for failure to prosecute.

IT IS SO ORDERED.

  s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE